UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| JAMES P. PICKETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No.: 1:13-CV-321 |
| | ) | Judge Curtis L. Collier |
| BILL JOHNSON, PRESIDENT AND CEO, | ) | |
| TENNESSEE VALLEY AUTHORITY and | ) | |
| THE TENNESSEE VALLEY AUTHORITY | ) | |
| BOARD OF DIRECTORS, for the | ) | |
| TENNESSEE VALLEY AUTHORITY, | ) | |
| | ) | |
| Defendants. | ) | |

**M E M O R A N D U M**

Before the Court is a motion for summary judgment filed by Defendants Bill Johnson,

President and CEO of Tennessee Valley Authority and the Tennessee Valley Authority Board of

Directors, for the Tennessee Valley Authority, (collectively, "TVA") (Court File No. 26).

Plaintiff James P. Pickett ("Plaintiff") responded (Court File No. 44) and TVA replied (Court

File No. 45). For the following reasons, the Court will **GRANT** TVA's Motion (Court File No.

26).

I.      FACTUAL BACKGROUND

Plaintiff is an African-American man who was employed by TVA from 1972 to 2012. At

the time of his termination, his position was that of Permanent Laborer Foreman in the Radiation

Protection Plant Services department of the Sequoyah Nuclear Plant. In that position, his

responsibilities included overseeing the cleanup and decontamination of plant equipment and

materials to prevent the undue release of airborne radioactive materials, monitoring access to

radiation controlled areas, ensuring that plant fire watches were continuously manned, and overseeing the collection, sorting, and storage of low-level radioactive waste from around the plant (Court File No. 33-1, Pickett Dep. 14–19). As permanent laborer foreman, Plaintiff would also occasionally fill in for his immediate supervisor, the Plant Services Supervisor. From 2008–2010, that person was Donna Stevens.

In May 2010, Stevens accepted another job at TVA and began the process of selecting her replacement. First she advertised the opening by issuing a Vacant Position Announcement. The Announcement summarized the duties the position would entail and listed the minimum qualifications necessary to apply. Plaintiff and seventeen other applicants, including both TVA employees and external candidates, submitted applications for the position.

Stevens employed a hiring template provided by TVA's Human Resources department to sort the applicants via a three-stage process. At the first stage, she ranked all of the applications on the basis of the applicant's experience, education, and certifications. Eleven applicants were culled at this stage.

At the second stage, all of the applicants took a Supervisor Skills Assessment test ("SSA"), a TVA requirement for first-line supervisor positions (Court File No. 31-1, TVA-SPP-11.2.7, at 4). The SSA is a computer-administered test consisting of a series of situational videos and questions intended to measure the probability of an applicant's success in a supervisory position. Based on their numerical scores, applicants were classified as either "Ready now," "Ready, with some development needs," "Potentially ready after significant development," or "Not likely to succeed." TVA regulations provided that if the hiring manager wished to select an applicant who obtained a score which placed them in either the "Potentially ready after significant development" or the "Not likely to succeed" categories, the manager had to request a

2

waiver from TVA's HR department (*id.*). TVA's hiring template indicated that a passing score on the SSA was a four or higher (Court File No. 30-3, Plant Services Supervisor Selection Matrix, at 10).

Plaintiff and one other applicant, a white male who had not filed any prior discrimination complaints with TVA's Equal Opportunity ("EO") office activity, received scores of three on the SSA (Court File No. 30, Stevens Decl. 4). Because several applicants received passing scores on the SSA, Stevens did not consider requesting a waiver for Plaintiff or the other applicant who had also received a three, and neither moved to the final phase of the selection process (*id.*). The three applicants who did ultimately proceed to the final interview stage, one of whom was a black male with prior EO activity, all received a six or higher on the SSA (*id.* at 4–5).

Following the interviews, Stevens tallied up the scores of the final three applicants from each of the three stages and offered the position to the applicant with the highest weighted score, Herbert Hill, a white candidate from outside TVA (*id.* at 5–6).

When Plaintiff learned of the results of the selection process in October 2010, he filed a formal complaint with TVA's EO office, alleging that he had not been chosen because of his race and because of his former EO complaints.[1] After conducting an investigation, the EO office concluded his non-selection was neither race- nor reprisal-based. Plaintiff appealed and the EEOC affirmed that finding on June 25, 2013.

From October 2010 until his termination in October 2012, Plaintiff worked under Hill's supervision. In describing their working relationship, Plaintiff stated that he initially got along well with Hill, but as time went on, he felt like Hill began to "pick" at him for minor issues

---

[1] Plaintiff had filed at least four other EO complaints during his tenure at TVA, (Court File No. 29, Minor Decl. 1–2), including one against a former supervisor whom he alleges was close friends with Stevens (Court File No. 33-1, Pickett Dep. 74–76).

(Pickett Dep. 80, 109–10). He ultimately came to feel that Hill had been hired as a "hit man" specifically to get him out of the way so TVA could promote another laborer to fill his spot (*id.* at 81). For his part, Hill stated that Plaintiff was a good worker and an asset to the department "when [he] was engaged," but that he did not always display the level of engagement that Hill expected of a foreman (Court File No. 27, Hill Decl. 2–3).

It is undisputed that Plaintiff was disciplined on at least four occasions in 2011 and 2012, the last of which led to his termination in October 2012. The first incident occurred on April 6, 2011. A TVA supervisor asked Plaintiff—for the third day in a row—to remove a piece of equipment from a radiologically controlled area. Plaintiff responded that he was busy and would get to it as soon as possible. Plaintiff testified that the supervisor "got smart" with him, after which Plaintiff told the supervisor that he "didn't need his attitude" (Pickett Dep. 85–86). The supervisor made a formal complaint to Hill, who had to ask Plaintiff two additional times to move the equipment (Hill Decl. 3).

The second incident occurred two weeks later, on April 19, 2011. Hill urgently requested that Plaintiff send some workers to deal with a flooding problem, but when he followed up after ten minutes, Plaintiff still had not sent anyone. A repair crew finally arrived thirty minutes after Hill's initial request (*id.* at 3). By way of explanation, Plaintiff noted that the leak was an ongoing problem and that his employees were doing other things, but stated that he understood the urgency of Hill's request and acknowledged he was lax in passing the message along to the employees (Pickett Dep. 87). Hill subsequently brought these two matters to the attention of TVA management, and Plaintiff was given a formal warning for insubordination, which included notice that "further actions of this nature will result in further disciplinary action, up to and including termination" (Court File No. 27-1, Written Warning-Insubordination, May 6, 2011).

4

The third incident occurred a year later, on April 16, 2012. Due to the potentially disastrous consequences of a fire at a nuclear plant, TVA follows strict fire-containment policies, mandated by the Nuclear Regulatory Commission (Hill Decl. 5–6). The design of the plant is compartmentalized, incorporating fire walls and fire-rated doors. Whenever a fire barrier is breached for any length of time, such as during construction or repair, either a continuous or periodic fire watch is required.

On this particular occasion, Plaintiff was responsible for ensuring that a periodic fire watch was carried out. Plaintiff had originally assigned several laborers to perform the watch, but another task came up and he reassigned them, instructing them that he would perform the watch himself. After the other task was completed, Plaintiff stopped performing the watch. Due to a lack of communication, the original laborers failed to resume the watch, and as a result, multiple fire watches were missed (Pickett Dep. 92–93; Hill Decl. 6). Plaintiff was suspended without pay for three days for this violation and again notified that future policy violations could result in termination.

The final incident involved a violation of TVA's vacuum cleaner policy. Plaintiff's department was responsible for overseeing the use of specialized vacuum cleaners within the plant to clean up radiological material, including dirt, debris, and water. TVA has a specific policy, RCI-18, governing use of the vacuum cleaners due to the potential for spreading radioactive material if the vacuums are misused (Court File No. 27-7). RCI-18 specifies that the vacuum cleaners are to be kept locked down, and that only Radiation Protection Plant Services personnel may issue vacuums for use by other employees—and then only after visually inspecting the vacuum to ensure it is in proper working condition, instructing the user on the proper usage of the vacuum, and logging issuance of the vacuum on a Radioactive Vacuum

Cleaner Status Log (*id.* at 5–6).

Plaintiff's department had previously received several citations for failing to follow RCI-18. As a result, Hill called a department-wide stand-down, or meeting, in June 2012 to emphasize the importance of following the policy (Hill Decl. 8–9). Plaintiff attended the stand-down. He testified that prior to Hill's tenure, the department had been issuing the vacuums for years without following any procedures, but that Hill was stricter about enforcing the vacuum cleaner policy than previous managers (Pickett Dep. 104).

On September 27, 2012, Hill asked Plaintiff to issue a vacuum to a maintenance employee (Hill Decl. 9). Hill stated that he explicitly reminded Plaintiff about RCI-18 and the recent stand-down when doing so (*id.*). Plaintiff did not follow RCI-18; instead, he simply gave the employee the key to obtain the vacuum on his own (*id.*). Plaintiff concedes that he violated the policy, but states that the employee "had been around for years" and "knew the ins and outs of using a vacuum cleaner" (Pickett Dep. 105). When Hill asked Plaintiff why he failed to follow the policy, Plaintiff stated that he did not have anyone available to issue the vacuum, and that he was too busy to do it himself (Hill Decl. 9).

Hill brought the matter to the attention of TVA management, who determined that in light of the earlier stand-down, and Hill's explicit reminder, Plaintiff's violation was knowing and intentional (Court File No. 27-10, Fact Finding Notes For Consensus Call, at 1). Due to his pattern of violations, and pursuant to TVA's progressive-discipline policy, management decided that termination was appropriate (*id.* at 2). Accordingly, Hill notified Plaintiff on October 17, 2012, that TVA was terminating his employment.

On January 14, 2013, Plaintiff filed an EO complaint alleging that his dismissal was based on his race and his prior EO activity. This complaint was dismissed by the EEOC after

Plaintiff filed his complaint before this Court. *See* 29 C.F.R. § 1614.107 ("The agency shall dismiss a complaint or a portion of a complaint . . . [t]hat is the basis of a pending civil action in a United States District Court . . . .").

## II.    STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc*., 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *2–3 (E.D. Tenn. Nov. 4, 2009) (explaining the court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, the movant can meet its burden of demonstrating that no genuine issue of material fact exists by pointing out the non-moving party's failure to produce evidence to support an essential element of its case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

7

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should grant summary judgment. *Id.* at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III. ANALYSIS

Plaintiff brings claims of race discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* (Title VII), based on two incidents: his non-selection for Plant Services Supervisor and his termination. Defendant requests summary judgment on all claims. The Court will address the parties' arguments regarding the two incidents in turn.

### A. Non-Selection Claims

Plaintiff asserts two claims in relation to his non-selection for the Plant Services Supervisor position: that it was based on race discrimination, in violation of 42 U.S.C. § 2000e-2, and that it was in retaliation for prior allegations of employment discrimination he filed with TVA's EO office, in violation of 42 U.S.C. § 2000e-3. Such claims may be established either through direct evidence or through circumstantial evidence supporting an inference of discrimination or retaliation. *E.g.*, *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 584 (6th Cir. 2003) (discrimination claims); *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 673 (6th Cir. 2013) (retaliation claims). Plaintiff does not claim to possess direct evidence that his non-selection was due to his race or prior discrimination complaints. The Court will therefore

8

evaluate these claims using the familiar tripartite burden-shifting approach established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and refined by *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981).

### 1. Race Discrimination

Under the *McDonnell Douglas* framework, the plaintiff carries the initial burden of establishing a *prima facie* case of race discrimination. *Vaughn v. Watkins Motor Lines, Inc.*, 291 F.3d 900, 906 (6th Cir. 2002). To establish a *prima facie* case for a non-selection discrimination claim, Plaintiff must show (1) he is a member of a protected class; (2) he applied for, but was not selected for, the position; (3) he was qualified for the job; and (4) a similarly-situated person who was not in his protected class received the job. *See Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 463 (6th Cir. 2003).

TVA asserts that we need not proceed to the second stage in the burden-shifting process because Plaintiff cannot make out a *prima facie* case of discrimination. This is so, TVA contends, because Plaintiff cannot establish the third element of his *prima facie* case: that he was qualified for the position. The Court agrees.

TVA regulations require that applicants for first-line supervisory positions obtain a passing score on the SSA, and Plaintiff did not receive a passing score. Plaintiff contends that a passing score is not a required qualification because TVA regulations permit the hiring manager to request a waiver of the requirement. But the fact that a required qualification may be waived does not, standing alone, constitute evidence that the requirement is illusory. *Shefferly v. Health Alliance Plan of Mich.*, 94 F. App'x 275, 284 (6th Cir. 2004). Indeed, here, only those applicants who obtained passing scores on the SSA proceeded to the next stage of the selection

9

process; none of the three applicants who made it to the interview stage received waivers.[2]

The Court concludes that passing the SSA is a genuine qualification for the Plant Services Supervisor position, and that because Plaintiff failed to obtain a passing score, he was not qualified for the position. Similarly, Plaintiff cannot establish the fourth element of his *prima facie* case—that the person selected for the position was similarly situated—because Hill received a passing score on the SSA, whereas Plaintiff did not. Because Plaintiff cannot make out a *prima facie* case under *McDonnell Douglas*, the Court will **GRANT** summary judgment for TVA on this claim.

### 2. Retaliation

Plaintiff likewise bears the burden of establishing a *prima facie* case of retaliation under *McDonnell Douglas*. *Fuhr,* 710 F.3d at 674. TVA contends that this claim must fail as well because Plaintiff cannot make out all of the elements of a *prima facie* case. To do so, Plaintiff must establish that (1) he engaged in activity protected under Title VII; (2) TVA knew that he had engaged in protected activity; (3) TVA took materially adverse employment action against him; and (4) there was a causal connection between the protected activity and the materially adverse action. *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014).

The required causal link must be "but-for" causation, which means that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of

---

[2] In his Complaint, Plaintiff claims that on other occasions, non-African American employees obtained supervisory positions despite having received failing scores on the SSA (Court File No. 11, Pl.'s Am. Compl. 4). In its Memorandum in Support of Defendants' Motion for Summary Judgment, TVA, citing supporting documentation, explains that each of these employees re-took the SSA and received passing results prior to obtaining a supervisory position (Court File No. 33, Defs.' Mem. Supp. Summ. J. 18). Plaintiff did not dispute or respond to this explanation. The Court therefore considers the argument abandoned. *See Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013).

the employer." *Id.* (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013)). At the *prima facie* stage, however, this showing need not be bullet-proof. *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007). Plaintiff is only required to "proffer evidence sufficient to raise the inference that [his] protected activity was the likely reason for the adverse action." *Id.* (quoting *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997)). Such evidence includes things like "a temporal connection between the protected activity and the retaliatory action," and being "treated . . . differently from similarly situated individuals." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516–17 (6th Cir. 2009). A very close temporal connection may be sufficient to give rise to an inference of retaliation, standing alone, but generally only if the period of time between the protected activity and the adverse action was less than six months. *Nicholson v. City of Clarksville*, 530 F. App'x 434, 447 (6th Cir. 2013). Longer periods of time must be coupled with additional evidence of retaliatory motive before courts will infer causation. *Id.*

TVA concedes the presence of the first three elements but argues that Plaintiff cannot show that his non-selection would not have occurred but for his prior complaints of discrimination. The Court agrees. Plaintiff has not identified evidence sufficient to raise a reasonable inference of retaliation.

Plaintiff acknowledges that at least "a few years" elapsed between the time he filed an EO complaint against his former supervisor—whom he alleges was close friends with Stevens— and the date of his non-selection (Pickett Dep. 77). This is too long a period of time to give rise to an inference of retaliatory motive based on temporal proximity alone. *See Nicholson*, 530 F. App'x at 447. Moreover, Plaintiff has identified no additional conduct by Stevens that would lead to such an inference. In fact, Plaintiff testified that he had a good working relationship with

11

Stevens; that he "got along great with her" (Pickett Dep. 58). Nor has Plaintiff demonstrated that he suffered disparate treatment related to his protected activity. At least one other applicant for the position failed to make it to the interview stage despite having made no prior EO complaints, while one of the applicants who *did* receive an interview *did* have prior EO activity.

Plaintiff argues that his SSA score indicated that he needed additional supervisory training, and Stevens's failure to provide him with that training and allow him to retake the test, or to waive the score requirement to allow him to proceed to the next level of the selection process despite a failing score, demonstrates her improper motive. But Title VII does not entitle employees to preferential treatment; it merely seeks to ensure that employees are not singled out for adverse treatment because of a protected characteristic or activity. *Burdine*, 450 U.S. at 259.

Because Plaintiff has produced no evidence that his prior EO activity was the but-for cause of his non-selection for Plant Services Supervisor, he cannot make out a *prima facie* case of retaliation. Thus, summary judgment will be **GRANTED** for TVA on this claim.

### B. Termination Claims

As with his non-selection, Plaintiff contends that TVA violated Title VII when it terminated his employment.

#### 1. Race Discrimination

In his related EEOC complaint, Plaintiff alleged that his termination was due both to race discrimination and retaliation for prior protected activity (Court File No. 29-2, 2013 EEOC Compl., at 1). Similarly, in his complaint before this Court, Plaintiff alleged, albeit with scant support, that both his non-selection and his termination were the result of both race discrimination and retaliation for filing an EO complaint about his non-selection (*see, e.g.*, Pl.'s Am. Compl. 7). Accordingly, TVA, in moving for summary judgment after the close of

12

discovery, devoted an entire section of its brief to responding to his race-based discriminatory termination claim (*see* Defs.' Mem. Supp. Summ. J. 25–27). But in his Memorandum in Response to TVA's Motion for Summary Judgment, Plaintiff makes no argument in support of—indeed, almost no *mention* of—his claim that his employment was terminated because of his race. The only reference to his discriminatory termination claim in his entire brief is in his conclusion, where he states summarily that "his discharge [was] based on his race, [as well as] prior and pending EO complaints," and that his termination "constitute[d] discrimination based on race as well as retaliation for his non-selection [complaint]" (*see* Court File No. 44, Pl.'s Mem. Resp. Defs.' Mot. Summ. J. 5).

"[The Sixth Circuit's] jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013). *See Hicks v. Concorde Career Coll.,* 449 F. App'x 484, 487 (6th Cir. 2011) (holding that a district court properly declines to consider the merits of a claim when a plaintiff fails to address it in a response to a motion for summary judgment); *Clark v. City of Dublin,* 178 F. App'x 522, 524–25 (6th Cir. 2006) (recognizing that the failure to respond properly to motion for summary judgment arguments constitutes abandonment of a claim); *Conner v. Hardee's Food Sys.,* 65 F. App'x 19, 24–25 (6th Cir. 2003); *see also Colston v. Cleveland Pub. Library,* No. 1:12–CV–204, 2012 WL 3309663, at *2 n.2 (N.D. Ohio Aug. 13, 2012) (deeming a claim abandoned and granting summary judgment when a plaintiff "did not respond or even mention [the] claim in her opposition to Defendants' motions for summary judgment").

Because Plaintiff has failed to put forward any argument or evidence in support of his discriminatory termination claim, the Court will **GRANT** summary judgment for TVA on this

13

claim.

### 2. Retaliation

Plaintiff does not rely on direct evidence of retaliation, so the Court will also use the *McDonnell Douglas*/*Burdine* burden-shifting framework to analyze this claim. TVA contends that Plaintiff's retaliatory termination claim fails at the first stage of the *McDonnell Douglas* analysis because Plaintiff has not produced sufficient evidence to support a reasonable inference that his employment was terminated because he had filed a discrimination complaint based on his non-selection. *See Laster*, 746 F.3d at 730 (holding that to make out a *prima facie* case of retaliation, a plaintiff must show, among other things, a but-for connection between the protected activity he engaged in and the materially adverse action taken by his employer). TVA notes that the twenty-month period between when Plaintiff filed his non-selection complaint and his termination is too long to raise an inference of retaliation based on temporal proximity alone, and claims that Plaintiff has put forth no credible evidence that he was treated differently than similarly situated employees who had not engaged in EO activity. *See Barrett*, 556 F.3d at 516–17 (stating that in ascertaining the presence of a causal link between an allegedly retaliatory act and a plaintiff's protected activity, courts generally look for the existence of a disparate treatment or a temporal connection between the protected activity and the retaliatory action). TVA maintains that the evidence demonstrates that it terminated Plaintiff for a pattern of progressive policy violations, not for engaging in protected activity.

In response, Plaintiff makes a raft of assertions, none of which finds support in the record. First, Plaintiff states that after he filed his complaint, his evaluations, which "had all been exceptional," "suddenly . . . went downhill" (Pl.'s Mem. Resp. Defs.' Mot. Summ. J. 3). In support of this contention, Plaintiff simply cites the Court to a thirty-nine-page exhibit,

14

consisting of scattered pages of his TVA personnel records. Plaintiff neither identifies the relevant portions of the attached records, nor explains how they support his point. *But see* Fed. R. Civ. P. 56(c)(1)(A) (requiring a party challenging a motion for summary judgment to cite to "particular parts of materials in the record" that support his assertion of genuinely disputed facts). Moreover, after sifting through the excerpted records, the Court can discern no salient difference between Plaintiff's work evaluation for the period immediately prior to the date of his non-selection complaint and his evaluation for the period following the complaint (*compare* Court File No. 41-1, Pickett Personnel Records, at 14–15 *with id.* at 20–21).

Plaintiff asserts that Hill continued to discipline him for various things, culminating in the vacuum cleaner incident that led to Plaintiff's termination. Notably, apart from that final incident, Plaintiff does not dispute that the discipline he received for these incidents was warranted. As for the vacuum cleaner incident, Plaintiff's arguments are woefully lacking in support. Plaintiff characterizes TVA's vacuum cleaner policy as "unclear," citing generally to the attached twelve-page policy, but includes no argument or explanation as to how it is unclear. (Pl.'s Mem. Resp. Defs.' Mot. Summ. J. 3). Plaintiff claims that his firing was in "direct violation" of TVA's progressive-discipline policy, citing generally to the attached eight-page policy, but fails to identify any way in which his termination failed to comply with that policy (*id.* at 4). Plaintiff asserts that his firing was "clearly contrary" to the discipline other employees received for like offenses, citing a fourteen-page compendium of TVA Problem Evaluation Reports, but he fails to explain how these records—which are not disciplinary records and which do not state the identities, positions, disciplinary records, or prior EO activity of the employees involved—are relevant to showing a causal link between his termination and his non-selection complaint (*id.*).

Plaintiff concludes by assuring the Court that he "covered these allegations and the proof for them in his interrogatory responses" and citing generally to his responses (*id.*). But as TVA points out in its reply brief, this utterly fails to give the Court and TVA notice of the particular facts over which there is a genuine dispute.

At summary judgment stage, the non-moving party must go beyond generalized allegations and muster specific facts that establish the presence of a genuine dispute for trial. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). Because Plaintiff has not done that, the Court has no choice but to **GRANT** summary judgment for TVA on this claim.

## IV.    CONCLUSION

Because the Court concludes Plaintiff has not come forward with sufficient evidence from which a fair-minded jury could return a verdict in his favor, the Court will **GRANT** Defendant's Motion for Summary Judgment in full (Court File No. 26).

**SO ORDERED.**

**ENTER:**

**/s/**_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

16